## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN  DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO: 2:08-cr-65-MHT |
| | ) | |
| JACK FURMAN DEAN, JR. | ) | |

## DEFENDANT'S BRIEF IN SUPPORT OF
## MOTION FOR NEW TRIAL

**COMES NOW** the Defendant, Jack Furman Dean, Jr., by and through undersigned

counsel, Christine A. Freeman, and submits the following, in support of his Motion  to set

aside the conviction on one of the two counts of this Indictment, based upon a violation of

the Double Jeopardy Clause of the Fifth Amendment and the Free Speech clause of the First

Amendment.    In the alternative, Defendant moves the Court to amend the sentence and

impose concurrent penalties on Counts 1 and 2.

### A.    18 U.S.C. §1466A(a)(2) is impermissibly overbroad,

Mr. Dean was charged in Count 1 of this indictment with a violation of 18 U.S.C.

§ 1466A(a)(2).  Sections 1466A(a) and (b)  define several alternative crimes.  The provision

under which Mr. Dean was charged is limited to the following offense:

> Any person who ... knowingly produces, distributes, receives, or
> possesses with intent to distribute, a visual depiction of any kind ... that
> ... (A) depicts an image that is, or appears to be, of a minor engaging in
> graphic bestiality, sadistic or masochistic abuse, or sexual intercourse,
> including genital-genital, oral-genital, anal-genital, or oral- anal, whether
> between persons of the same or opposite sex; and (B) lacks serious
> literary, artistic, political, or scientific value.

18 U.S.C. § 1466A(a)(2).

In addition, subsection 1466A( c) states "It is not a required element of any offense under this section that the minor depicted actually exists."

      **1.**      **The standards for prohibiting visual expression require the three-part *Miller* test.**

In *Miller v. California,* 413 U.S. 15 (1973), the Supreme Court defined "the standards which must be used to identify obscene material that a State may regulate without infringing on the First Amendment . . . ." 413 U.S. at 20. The Court had addressed this issue earlier, with apparently conflicting opinions in *Roth v. United States*, 354 U.S. 476 (1957) and in *Memoirs v. Massachusetts*, 383 U.S. 413 (1966). "While *Roth* presumed 'obscenity' to be 'utterly without redeeming social importance,' *Memoirs* required that to prove obscenity it must be affirmatively established that the material is 'utterly without redeeming social value.'" *Miller*, 413 U.S. at 21 - 22.

In the *Miller* case, the Supreme Court considered the constitutionality of a California statute which prohibited the following conduct:

> Every person who knowingly: sends or causes to be sent, or brings or causes to be brought, into this state for sale or distribution, or in this state prepares, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute, any obscene matter is guilty of a misdemeanor. . . .

California Penal Code s 311.2(a)

Mr. Miller was convicted of violating this statute, based on his conduct of mailing five unsolicited advertising brochures for adult pornographic material. The brochures consisted primarily of "pictures and drawings very explicitly depicting men and women in groups of

two or more engaging in a variety of sexual activities, with genitals often prominently displayed."  413 U.S. at 18.

The California statute under which Mr. Miller was prosecuted defined "obscene" as:

> "Obscene" means that to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters and is matter which is utterly without redeeming social importance.

California Penal Code s 311(a).

Thus, as the *Miller* Court noted, the California statute's definition of "obscenity" appeared to follow the elements required by the Supreme Court  in *Memoirs*, for constitutionally permitted restriction on speech as "obscene." ("The case we now review was tried on the theory that the California Penal Code § 311 approximately incorporates the three-stage *Memoirs* test . . .")  413 U.S. at 23.[1]

However,  Mr. Miller argued on appeal that the test for obscenity remained unclear because his jury had been instructed to apply  "contemporary community standards of the State of California."  413 U.S. at 31.  He argued that application of "state," rather than

---

[1] *Memoirs* held ". . . three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because if affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."  383 U.S. at 418.

3

national, standards of decency violated the First and Fourteenth Amendments.

The Court rejected Mr. Miller's argument regarding the "community" for the standard of decency.  Further, although the Court's discussion does not indicate that Mr. Miller had raised this issue, the *Miller* court also addressed the identification of more  "concrete guidelines to isolate 'hard core' pornography from expression protected by the First Amendment."  *Miller*, 413 U.S. at 29.  Thus, in addition to holding that the "community" standard of decency was not a "national" standard, the Court in *Miller* imposed additional limits on regulation of expression:

> . . . we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.

413 U.S. at 24 (footnote omitted).

The Court held that:

> no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive 'hard core' sexual conduct specifically defined by the regulating state law, as written or construed.

413 U.S. at 28.

In conclusion, the Court held:

> we (a) reaffirm the Roth holding that obscene material is not protected by the First Amendment; (b) hold that such material can be regulated by the States, subject to the specific safeguards enunciated above, without

4

a showing that the material is 'utterly without redeeming social value';
and © hold that obscenity is to be determined by applying 'contemporary
community standards,' . . . ,  not 'national standards.'

413 U.S. at 36 - 37 (citations omitted).

> **2.    The standards for prohibiting visual expressions involving
> children require that limitations be restricted to specific age and
> conduct within the knowledge of the defendant.**

In *New York v. Ferber*, 458 U.S. 747 (1982), the Supreme Court held that "the States
are entitled to greater leeway in the regulation of pornographic depictions of children." 458
U.S. at 756.   The Court rejected strict application of the *Miller* requirements to child
pornography. 458 U.S. at 761.  However, the Court still found that there are "limits on the
category of child pornography which, like obscenity, is unprotected by the First
Amendment."  The Court required that "the conduct to be prohibited must be adequately
defined;" that the state offense must "be limited to works that *visually* depict sexual conduct
below a specified age;" that "(t)he category of 'sexual conduct' proscribed must also be
suitably limited and described;" and that "criminal responsibility may not be imposed without
some element of scienter on the part of the defendant."  458 U.S. at 764 - 765.  The Court
also noted that "nudity, without more, is protected expression."  458 U.S. at 766, n. 18.

The Court held that the New York statute under consideration, which prohibited
persons from knowingly promoting a sexual performance by a child under 16 by distributing
material depicting such performance, included specific definitions and "sufficiently describes
a category of material  the production and distribution of which is not entitled to First

Amendment protection." 458 U.S. at 765. The Court also found that the statute did not reach a substantial number of impermissible applications and therefore was not "substantially overbroad," in violation of the First Amendment. *Ferber*, 458 U.S. at 771, 774.

In *Osborne v. Ohio*, 495 U.S. 103 (1990), the Supreme Court reviewed the constitutionality of an Ohio statute which prohibited possession of nude images of a minor unrelated to the possessor unless certain exceptions applied.[2] 495 U.S. at 106 - 107. The Court found that the state could constitutionally prohibit such private possession and that the statute, as narrowed by the interpretation of the Ohio Supreme Court,[3] was not unconstitutionally overbroad. 495 U.S. at 111, 113.[4]

### 3. A challenge that a statute is overbroad may be brought by a defendant whose conduct could arguably be prohibited.

Both *Ferber* and *Osborne* discuss the analytical framework for determining if a statute is unconstitutionally overbroad under the First Amendment. Because of "the sensitive nature

---

[2]The exceptions included situations where the material or performance was presented for "a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance" and the possessor knew the minor's parents, guardian or custodian had "consented in writing to the photographing or use of the minor in a state of nudity and to the manner in which the material or performance is used or transferred." Ohio Rev.Code Ann. § 2907.323(A)(3)(a),(b); 495 U.S. at 106 - 107.

[3]On direct appeal, the Ohio Supreme Court read into the statute the requirement that the nudity depicted "constitutes a lewd exhibition or involves a graphic focus on the genitals," 495 U.S. at 113, and "also concluded that the State had to establish scienter" in order to prove a violation of the statute, 495 U.S. at 115.

[4]However, the Supreme Court reversed Mr. Osborne's conviction, because the jury had not been properly instructed on all elements of the offense. 495 U.S. at 123 - 125.

of protected expression," such challenges may be brought even by persons whose conduct

"is clearly unprotected and could be proscribed by a law drawn with the requisite specificity."

*Ferber*, 458 U.S. at 768, 769; *Osborne*, 495 U.S. at 116, n. 12.  However, "(b)ecause of the

wide-reaching effects of striking down a statute on its face at the request of one whose own

conduct may be punished despite the First Amendment," the overbreadth doctrine is to be

applied "with hesitation" and "only as a last resort."  *Ferber*, 458 U.S. at 769, quoting

*Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973).

 Therefore, the Court requires "that the overbreadth involved be 'substantial' before

the statute involved will be invalidated on its face,"  *Ferber*, 458 U.S. at 769, "particularly

where conduct and not merely speech is involved."  *Ferber*, 458 U.S. at 770, quoting

*Broadrick*, 413 U.S. at 615.

 "When a federal court is dealing with a federal statute challenged as overbroad, it

should, of course, construe the statute to avoid constitutional problems, if the statute is

subject to such a limiting construction," or if it is not, but "if it is severable, only the

unconstitutional portion is to be invalidated."  *Ferber*, 458 U.S. at 769, n. 24.  Lastly, a

statute construed narrowly "may be applied to conduct occurring prior to the construction,

provided such application affords fair warning to the defendant."  *Osborne*, 495 U.S. at 115,

quoting *Dombrowski v. Pfister*, 380 U.S. 479, 491 at n. 7.

   **4. Congress may not prohibit visual expressions involving children
which are not obscene or do not involve actual children.**

In 2002, in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), the Supreme

Court reviewed a federal statutory prohibition on child pornography.  The Child Pornography

Prevention Act of 1996 (CPPA) prohibited possession or distribution of child pornography,

but "expand[ed] the federal prohibition on child pornography to include not only

pornographic images made using actual children, 18 U.S.C. § 2256(8)(A), but also 'any

visual depiction, including any photograph, film, video, picture, or computer or computer-

generated image or picture,' that '**is, or appears to be**, of a minor engaging in sexually

explicit conduct,' § 2256(8)(B), and any sexually explicit image that is 'advertised,

promoted, presented, described, or distributed in such a manner that **conveys the**

**impression**' it depicts 'a minor engaging in sexually explicit conduct,' § 2256(8)(D)."  *Free*

*Speech Coalition*, 535 U.S. at 234 (syllabus) (emphasis added).  The CPPA established

"severe" penalties for this conduct, of up to 15 years for a first offender and 5 to 30 years for

a repeat offender, 18 U.S.C. § 2252A(b)(1).

   The Supreme Court observed that this statute "goes beyond" the ruling in *Ferber*, by

"prohibiting child pornography that does not depict an actual child," 535 U.S. at 240, and

exceeds the *Miller* standard by prohibiting certain "visual depictions, such as movies, even

if they have redeeming social value." 535 U.S. at 240.  The material prohibited by the CPPA

"need not appeal to the prurient interest," 535 U.S. at 246.  The CPPA prohibited "the visual

depiction of an idea – that of teenagers engaging in sexual activity – that is a fact of modern

society and has been a theme in art and literature throughout the ages." 535 U.S. at 246.  The

CPPA could not, the Court held, "be read to prohibit obscenity, because it lacks the required

link between its prohibitions and the affront to community standards prohibited by the definition of obscenity."  535 U.S. at 249. The CPPA prohibited speech "that records no crime and creates no victims by its production."  535 U.S. at 250.

The Supreme Court held that these provisions of the CPPA were overbroad and unconstitutional under the First Amendment.  535 U.S. at 256, 258.  The case provided, the Court observed, "a textbook example of why we permit facial challenges to statutes that burden expression.  With these severe penalties in force, few legitimate movie producers or book publishers, or few other speakers in any capacity, would risk distributing images in or near the uncertain reach of this law."  535 U.S. at 244.

In partial response to the *Free Speech Coalition* decision, Congress passed the PROTECT Act in 2003.[5]  The "findings" made by Congress in passing this Act included observations that the *Free Speech Coalition* decision had made prosecution of child pornography offenders more difficult; that "defendants in child pornography cases have almost universally raised the contention that the images in question could be virtual;" and that "a statute must be adopted that prohibits a narrowly-defined subcategory of images." Pub.L. 108-21, Title V, § 501(9), (10), (14), Apr. 30, 2003, 117 Stat. 650.  Section 502 of the PROTECT Act amended the CPPA.  Section 503 amended 18 U.S.C. § 2252A, in part by

---

[5]PL 108-21 (S 151), April 30, 2003; "Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003."

adding a new offense relating to promotion of child pornography.[6]  Section 504 created 18

U.S.C. § 1466A, the statute at issue in Mr. Dean's prosecution.

In May 2008, in *United States v. Williams*, ___ U.S. ___, 128 S.Ct. 1830 (2008), the

Supreme Court reviewed the "promotion of child pornography" offense created by Section

503 of the PROTECT Act.  The Court  reversed an Eleventh Circuit decision which had

found that provision to be both overbroad under the First Amendment and impermissibly

vague under the Due Process Clause.  *United States v. Williams*, 444 F.3d 1286 (11th Cir.

2006).

In its *Williams* decision, the Supreme Court characterized the "promotion" statute as

prohibiting "offers to provide and requests to obtain child pornography."  128 S.Ct. at 1838.

The statute thus does not address the "actual existence of child pornography," but is focused

on banning "the collateral speech that introduces such material into the child-pornography

distribution network."  128 S.Ct. at 1838 - 1839.  The Court held that the statute's definition

of the material that could not be promoted or solicited "precisely tracks the material held

constitutionally proscribable in *Ferber* and *Miller*: obscene material depicting (actual or

virtual) children engaged in sexually explicit conduct, and any other material depicting actual

---

[6]The PROTECT Act defined the offense as "knowingly . . . (B) advertises, promotes, presents, distributes, or solicits through the mails, or in interstate or foreign commerce by any means, including by computer, any material or purported material **in a manner that reflects the belief, or that is intended to cause another to believe**, that the material or purported material is, or contains - (I) an obscene visual depiction of a minor engaging in sexually explicit conduct; or (ii) a visual depiction of an actual minor engaging in sexually explicit conduct."   18 U.S.C. 2252A(3)(B);  Pub.L. 108-21, Title V, § 503 (1), Apr. 30, 2003, 117 Stat. 650.

children engaged in sexually explicit conduct."  128 S.Ct. at 1839.

   In upholding the statute, the Court noted a number of important features in the statute. It includes a scienter requirement, through inclusion of the word "knowingly."  128 S.Ct. at 1839.  The "operative verbs" ("advertises, promotes, presents, distributes , or solicits") are "transactional," and relate  to speech "that accompanies or seeks to induce a transfer of child pornography."  128 S.Ct. at 1839.  The statute's phrases "in a manner that reflects the belief" and "in a manner . . . that is intended to cause another to believe" include "both subjective and objective components," requiring that the defendant actually hold the belief, or intend another to have the belief that the material is child pornography.  128 S.Ct. at 1840.  The definition of "sexually explicit conduct" contained in the statute is "very similar to the definition of 'sexual conduct'" upheld in *Ferber*.  128 S.Ct. at 1840.

   The Court held that the Eleventh Circuit had misunderstood the Supreme Court's prior categorical exclusions of certain types of speech from First Amendment protection.  The Eleventh Circuit wrongly "believed that the exclusion of First Amendment protection extended only to *commercial* offers to provide or receive contraband."  128 S.Ct. at 1841 (emphasis in original).  However, the Court clarified, "offers to give or receive what it is unlawful to possess have no social value and thus, like obscenity, enjoy no First Amendment protection," whether commercial or not.  128 S.Ct. at 1841 - 1842.  Thus, "offers to provide or requests to obtain child pornography" are not protected by the First Amendment.  *Id.*

   The Eleventh Circuit also apparently "thought that it would be unconstitutional to

punish someone for mistakenly distributing virtual child pornography as real child pornography," 128 S.Ct. at 1842, or to punish someone who subjectively but incorrectly believes "that an innocuous picture of a child is 'lascivious,'" 128 S.Ct. at 1843. The Supreme Court disagreed.   Noting that "impossibility of completing the crime" is not a defense to the inchoate crimes of attempt and conspiracy, the Court held that offers to deal in illegal products "do not acquire First Amendment protection when the offeror is mistaken about the factual predicate of his offer,"  128 S.Ct. at 1843, but also noted that there must be both a belief by the defendant that the image contains certain material and the actual presence of material that "must meet the statutory definition."  128 S.Ct. at 1843.

The Supreme Court discussed a number of "fanciful hypotheticals" apparently posited during oral argument as dangers from the reach of the statute.   It dispensed with each of these in turn, and made the observation:

> But an offer to provide or request to receive virtual child pornography is not prohibited by the statute.  A crime is committed only when the speaker believes or intends the listener to believe that the subject of the proposed transaction depicts *real* children.  It is simply not true that this means 'a protected category of expression [will] inevitably be suppressed,' . . . .  Simulated child pornography will be as available as ever, so long as it is offered and sought *as such*, and not as real child pornography.

128 S.Ct. at 1844.

The Supreme Court also rejected the Eleventh Circuit's "void for vagueness" analysis of the statute, characterizing the hypotheticals envisioned by the Eleventh Circuit as "unproblematic" and the Circuit's emphasis on "close cases" as a "basic mistake."  128 S.Ct.

at 1846.   The Court said that "(w)hat renders a statute vague is . . . the indeterminacy of precisely what [the incriminating] fact is."   The Court held that "(t)here is no such indeterminacy here.   The statute requires that the defendant hold, and make a statement that reflects, the belief that the material is child pornography; or that he communicate in a manner intended to cause another so to believe.   Those are clear questions of fact."   128 S.Ct. at 1846.

> **5.      The statute under which Mr. Dean is charged is overbroad and unconstitutionally prohibits both non-obscene visual expressions involving children and visual expressions which do not involve children.**

The Supreme Court has not yet addressed the constitutionality of the statute charged against Mr. Dean in Count 1 of his indictment.   Counsel has only located a single opinion discussing the specific provision under which Mr. Dean was charged.   That opinion found the statute to be unconstitutionally overbroad.

In *United States v. Handley*, 564 F.Supp.2d 996 (S.D. Iowa 2008), the defendant was charged  with receipt of obscene visual representations of the sexual abuse of children in violation of 18 U.S.C. § 1466A(a), possession of obscene visual representations of the sexual abuse of children in violation of 18 U.S.C. § 1466A(b), and mailing obscene matter in violation of 18 U.S.C. §§ 1461. All of the images possessed by the defendant were drawings from Japanese anime comic books.  564 F. Supp. 2d at 999.

The defendant filed a motion to dismiss, arguing in part,  that 18 U.S.C. §§ 1466A (a)(2) and (b)(2) unconstitutionally prohibited sexually-oriented speech that is not obscene in the absence of a compelling government reason for doing so.  Mr. Handley also argued

13

that the ban on virtual child pornography and sexually oriented speech, without first considering whether it appeals to a prurient interest or is patently offensive, is also unconstitutional. 564 F. Supp. 2d at 1004.

The Court discussed the language of § 1466A(a)(1) and (b)(1), each of which require a depiction,  of "a minor engaging in sexually explicit conduct," and the depiction "is obscene" and noted that this language necessarily incorporated the three-part *Miller* test and thus were not overbroad.[7]  In contrast, the statute under which Mr. Handley and Mr. Dean were charged "does not require the material be deemed obscene."  564 F.Supp. 2d at 1005. The government argued that the statute defined a *per se* obscene image, by reference to the age of the minors depicted and the type of conduct that must be shown, and thus did not need to require as elements that the images were "patently offensive" or appealed to "prurient interest," as required by *Miller*.  564 F. Supp. 2d at 1005.

The district court disagreed and pointed out:

> The Government's argument that subsections 1466A(a)(2) and (b)(2) represent "narrow classes of materials" that are per se obscene simply does not account for the fact that subsection 1466A(a)(1) and (b)(1) prohibit the same "narrow classes of materials" yet also require a finding beyond a reasonable doubt that the material is obscene.

564 F. Supp. 2d at 1005.

The district court also found that *Miller v. California* did not define  pornography that

---

[7]§ 1466A(a)(1) prohibits knowing production, distribution, receipt, or possession with intent to distribute of "a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting, that – (1)(A) depicts a minor engaging in sexually explicit conduct; **and (B) is obscene**. (Emphasis added.)

can be *per se* prohibited, but merely gave examples of conduct that could be specifically

defined by state law under the *Miller* test.  564 F. Supp. 2d at 1006.  The Court concluded:

> The Supreme Court outlined in *Miller* a three-prong test for the trier of fact to use in determining what constitutes obscenity. The Government has failed to provide any authority that indicates Congress can usurp the function of the fact-finder by doing away with portions of the *Miller* obscenity test in regulating visual depictions not involving the use of actual minors. Pornography can only be banned if it is obscene or involves the use of actual minors. *Free Speech Coalition*, 535 U.S. at 240, 122 S.Ct. 1389.  Subsections 1466A(a)(2) and (b)(2) require neither and are therefore overbroad and unconstitutional.

*United States v. Handley,* 564 F.Supp.2d at 1007.

### 6.    This Court should adopt the reasoning of the *Handley* case.

Just as the Supreme Court observed in *Free Speech Coalition*, the statute under

consideration here, 18 U.S.C. § 1466A(2), "goes beyond" the ruling in *Ferber*, by

"prohibiting child pornography that does not depict an actual child,"  535 U.S. at 240, and

the statute exceeds the *Miller* standard by prohibiting certain visual depictions even if they

do not  "appeal to the prurient interest," 535 U.S. at 246.  Just as in *Free Speech Coalition,*

the statute at issue here can not  "be read to prohibit obscenity, because it lacks the required

link between its prohibitions and the affront to community standards prohibited by the

definition of obscenity."  535 U.S. at 249. By permitting prosecution for images that merely

"appear to be" of minors, and/or that do not constitute obscenity, this statute includes within

its reach expression "that records no crime and creates no victims by its production."  535

U.S. at 250.

15

The Supreme Court held that provisions of the CPPA with these characteristics were overbroad and unconstitutional under the First Amendment. 535 U.S. at 256, 258. Similarly, the statute at issue here is overbroad and unconstitutional.

When the Supreme Court upheld the prohibition of child pornography promotion provision of the PROTECT Act, it noted a number of important characteristics in that statute. Those characteristics are not present in the statute under which Mr. Dean was convicted. In § 1466A(a)(2), the word "knowingly" appears to modify only the act of production, distribution, receipt or possession, and not relate to the defendant's awareness of the characteristics of the image. The "operative verbs" do not accompany only images of actual child pornography but permit conduct in relation to images which are not obscene or which do not involve actual minors. The phrase relating to the age of the person(s) depicted in the image ("is, or appears to be, of a minor") does not require the defendant to individually know or believe that the material is child pornography. Compare, 128 S.Ct. at 1839 - 1840. Moreover, the statute includes within its coverage the circumstance explicitly permitted by *Williams*, 128 S.Ct. at 1844 ("Simulated child pornography will be as available as ever, so long as it is offered and sought *as such*, and not as real child pornography.")

These flaws in the statute show that the statute is not "narrowly drawn" and restricts conduct available to law-abiding adults. For this reason, Mr. Dean's conviction under 18 U.S.C. § 1466A(a)(2) must be vacated.

**B.    Mr. Dean's two convictions violate the prohibitions against multiplicity and double jeopardy.**

Mr. Dean incorporates herein the argument made on this issue in his Motion for New Trial, including particularly pages 2 - 10 of that Motion.  (Doc. 41.)

"The Double Jeopardy Clause is implicated when a defendant has been convicted under two different criminal statutes and both statutes prohibit the same offense or one offense is a lesser-included offense of the other." *U.S. v. Schales*, 546 F. 3d 965, 977 (9th Cir. 2008) (citing *Rutledge v. U.S.*, 517 U.S. 292, 297 (1996); *U.S. v. Davenport*, 519 F. 3d 940, 943 (9th Cir. 2008)).

In this case, the two relevant statutes to which Mr. Dean pled guilty are 18 U.S.C. § 1466A(a)(2) and 18 U.S.C. § 2252A(a)(5)(B). 18 U.S.C. § 1466A(a)(2), which criminalizes the production of an obscene visual representation of the sexual abuse of a child, states:

> Any person who ... knowingly produces, distributes, receives, or possesses with intent to distribute, a visual depiction of any kind ... that ... (A) depicts an image that is, or appears to be, of a minor engaging in graphic bestiality, sadistic or masochistic abuse, or sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral- anal, whether between persons of the same or opposite sex; and (B) lacks serious literary, artistic, political, or scientific value.

18 U.S.C. § 2252A(a)(5)(B), which criminalizes the possession of child pornography, states:

> Any person who ... knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed,

17

or shipped or transported in interstate or foreign commerce by any means, including by computer.

In *United States v. Miller*, 527 F.3d 54 (3rd Cir. 2008) the defendant was convicted of receiving and possessing child pornography, pursuant to 18 U.S.C. §2252A(a)(2) and 18 U.S.C. §2252A(a)(5)(B). The police found Mr. Miller to be in possession of a zip disk containing 1200 - 1400 images, of which 11 images were determined to be child pornography. On appeal, Mr. Miller argued, among other things, that "the Constitution's double jeopardy clause barred entry of separate convictions for receiving and possessing the same images of child pornography." *Miller*, 527 F.3d at 58.

Reviewing this claim under a plain error standard, the Third Circuit agreed with Mr. Miller, concluding that "the double jeopardy clause barred convictions for both receiving and possessing the same images of child pornography, and the entry of guilty verdicts on both of these counts was plain error." *Id.* The court explained that:

> There is a rebuttable presumption that "where two statutory provisions proscribe the same offense, a legislature does not intend to impose two punishments for that offense." Id. (internal quotations omitted). Thus, if (a) two statutory provisions "proscribe the same offense" and (b) it is not clear that the legislature intended multiple punishments for the offense, then the double jeopardy clause protects a defendant from being convicted under both of the provisions.

*Miller*, 527 F.3d at 70-71.

The court further explained that under the double jeopardy analysis, two offenses are the same if one is a lesser-included offense of the other under the test in *United States v.*

18

*Blockburger,* 284 U.S. 299 (1932), which "inquires whether each offense contains an element

not contained in the other; if not, they are the same offense" *Id.*, at 71. "However, it is clear

that, as a  general matter, possession of a contraband item is a lesser-included offense of

receipt of the item."  *Id.* (citing *Ball v. United States*, 470 U.S. 856, 105 S.Ct. 1668, 84

L.Ed.2d 740 (1985)). The Third Circuit also referenced the Ninth Circuit's opinion in *United*

*States v. Kuchinski*, 469 F.3d 853, 859 (9th Cir.2006), "in which the defendant was indicted

both under § 2252A(a)(2) and under §2252A(a)(5)(B), [and the Ninth Circuit] observed, in

dicta, that '[i]f, as it seems, the counts were based on the same acts, entering judgment on

both the offenses would be improper.'"

The Eleventh Circuit has held that "[f]or an offense to be a lesser-included offense of

a parent offense, its elements must be contained within the elements of the parent offense,

i.e., the elements of the prospective lesser-included offense must be a subset of those

contained in the parent offense." *United States v. Stone*, 139 F.3d 822, 839 (11th Cir. 1998).

Using the same reasoning as that used by the Third Circuit in *Miller,* the Eleventh Circuit in

*United States v. Hodges,* 628 F.2d 350 (11th Cir. 1980) held that where a defendant is

convicted of both possession and receipt of a firearm under 18 U.S.C. §1202(a)(1) and

922(h)(1), receipt and possession of a firearm is  a single offense that can only be charged

under either 18 U.S.C. §1202(a)(1) or §922(h)(1).

In this case, the Indictment did not clearly delineate whether the offenses described

in Count 1 and Count 2 related to the same or different visual images.   Under these

circumstances, conviction on both counts violates the prohibition against double jeopardy.

Moreover, it is appropriate for this Court to consider double jeopardy and multiplicity in determining whether sentences should be concurrent or consecutive.

**FOR THE FOREGOING REASONS,** Defendant requests that his Motion for New Trial be granted.

Respectfully submitted,

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**Counsel for Mr. Dean**
**TN BAR NO.: 11892**
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:  (334) 834-2099
FAX:  (334) 834-0353
E-Mail: Christine_Freeman@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Nathan Stump, Assistant United States Attorney, 131 Clayton Street, Montgomery, AL.

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:  (334) 834-2099
FAX:  (334) 834-0353