Debra P. Hackett
Clerk, U.S. District Court
15 LEE ST STE 206
MONTGOMERY  AL  36104-4055

April 14, 2011

**Appeal Number: 09-16133-AA**
Case Style: USA v. Jack Furman Dean, Jr.
District Court Number:  08-00065 CR-T-N

TO:   Debra P. Hackett

CC:   Christine A. Freeman

CC:   Patricia Vanessa Kemp

CC:   Nathan D. Stump

CC:   Administrative File

# United States Court of Appeals

Eleventh Circuit

56 Forsyth Street, N.W.

Atlanta, Georgia  30303

**John Ley**
Clerk of the Court

For rules and forms visit
www.ca11.uscourts.gov

April 14, 2011

Debra P. Hackett
Clerk, U.S. District Court
15 LEE ST STE 206
MONTGOMERY  AL  36104-4055

**Appeal Number: 09-16133-AA**
Case Style: USA v. Jack Furman Dean, Jr.
District Court Number:  08-00065 CR-T-N

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, <u>but not a copy of the court's decision</u>, is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

John Ley, Clerk of Court

Reply To: James O. Delaney (404) 335-6113

Encl.

MDT-1 (06/2006)

# United States Court of Appeals

## For the Eleventh Circuit

No. 09-16133

District Court Docket No.
08-00065-CR-T-N

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Mar 16, 2011

JOHN LEY
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JACK FURMAN DEAN, JR.,

Defendant-Appellant.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

-----------------------------------------------------------------
Appeal from the United States District Court
for the Middle District of Alabama
-----------------------------------------------------------------

## J U D G M E N T

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

ISSUED AS MANDATE
APR 1 4 2011
U.S. COURT OF APPEALS
ATLANTA GA

Entered:     March 16, 2011
For the Court:   John Ley, Clerk
By:     Patch, Jeffrey

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 09-16133

> FILED
> U.S. COURT OF APPEALS
> ELEVENTH CIRCUIT
> MARCH 16, 2011
> JOHN LEY
> CLERK

D. C. Docket No. 08-00065-CR-T-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JACK FURMAN DEAN, JR.,

Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Alabama

(March 16, 2011)

Before DUBINA, Chief Judge, ANDERSON, Circuit Judge, and MOODY,*
District Judge.

ANDERSON, Circuit Judge:

---

*Honorable James S. Moody, Jr., United States District Judge for the Middle District of Florida,
sitting by designation.

This case is an appeal of Dean's conviction under 18 U.S.C. § 1466A(a)(2) for producing child pornography and under 18 U.S.C. § 2252A(a)(5)(B) for possessing child pornography. Dean pled guilty to the offenses and the United States District Court for the Middle District of Alabama sentenced him to thirty years imprisonment by imposing a twenty-year sentence under § 1466A(a)(2) to run consecutive with a ten-year sentence under § 2252A(a)(5)(B). After sentencing, Dean moved for a new trial, arguing inter alia that § 1466A(a)(2) is facially invalid because it is substantially overbroad in violation of the First Amendment. The court rejected his motion.

Dean now appeals, arguing that § 1466A(a)(2) is unconstitutionally overbroad on its face[1] and that his sentence is substantively unreasonable. After carefully considering the parties' briefs, thoroughly investigating the record, and hearing oral arguments, we reject Dean's arguments and affirm the district court's decision.

## I. BACKGROUND

Dean sexually abused his stepdaughter from the time she was age eleven

---

[1] Dean does not challenge his conviction for possessing child pornography under § 2252A(a)(5)(B).

until she was age twenty-seven, and he recorded 245 episodes of abuse on video. Dean produced at least fifty-eight of these recordings while the victim was a minor. The recordings show Dean digitally penetrating her vagina and engaging in oral-vaginal contact with her while she was asleep at age eleven. The victim became conscious of the abuse at age thirteen, when Dean began to ask her to undress in front of him. The abuse progressed to the point that, before the victim had reached eighteen years of age, Dean had instructed his own minor daughters to record videos of the victim naked, performed oral and vaginal sex on her, and invited another adult male to engage in sexual intercourse with her. In some of the videos of the victim as a minor, Dean beat her to the point that she cried and begged him to stop.

The abuse continued at great physical and psychological cost to the victim for several years. The victim required three rectal surgeries to correct damage that Dean caused by penetrating her anus. All the while, Dean coerced her into complying and remaining silent by threatening to kill or leave her mother and by reminding her that no one had believed her stepsister when she had reported sexual abuse. In May of 2007, Dean called the victim once again and threatened to kill her mother and her husband if she did not come to his barbershop, where he tied her to the wall with ropes and violently penetrated her vagina with a bottle. It was

after this incident that the victim reported Dean to the police, who arrested Dean

and confiscated the recordings that form the basis for convicting him for the

production and possession of child pornography under 18 U.S.C. §§ 1466A(a)(2)

and 2252A(a)(5)(B), respectively.

Dean pled guilty to both charges, but at sentencing he objected to

consecutive sentences, arguing that the possession count was a lesser included

offense of the production count.  The district court instructed him to raise this

objection in a motion for new trial.  In filing this motion, Dean also argued for the

first time that 18 U.S.C. § 1466A(a)(2) violates the First Amendment because it is

facially overbroad.[2]  The district court denied the motion, and Dean has appealed to

this Court arguing that the statute is overbroad on its face in violation of the First

Amendment and that his sentence is substantively unreasonable.

―――――――――――

[2]        Dean did not raise his overbreadth challenge until after pleading guilty, and
"[t]he general rule is that a guilty plea waives all non-jurisdictional challenges to a conviction."
United States v. Smith, 532 F.3d 1125, 1127 (11th Cir. 2008).  However, the Supreme Court has
recognized an exception to the general rule for circumstances in which a defendant claims that
the charge, on its face, "is one which the State may not constitutionally prosecute."  Menna v.
New York, 423 U.S. 61, 62 n.2, 96 S. Ct. 241, 242 n.2, 46 L. Ed. 2d 195 (1975) (per curiam)
(recognizing the exception for purposes of a double jeopardy claim); Smith, 532 F.3d at 1127
(same).  The district court reasoned from this precedent that, if Dean's overbreadth challenge had
merit, the government could not constitutionally prosecute him under § 1466A(a)(2) and the
claim would not be waived.  However, we need not address the possibility of waiver because the
government has not asserted that Dean waived his right to bring this challenge, and "[w]e do not
believe it is incumbent upon us to make a waiver argument which the government was willing to
forego."  Ochran v. United States, 117 F.3d 495, 503 (11th Cir. 1997).  Accordingly, we consider
Dean's overbreadth claim on its merits.

## II.  STANDARD OF REVIEW

We review the constitutionality of a statute de novo.  United States v.

Knight, 490 F.3d 1268, 1270 (11th Cir. 2007).  Dean bears the burden to prove that

§ 1466A(a)(2) violates the First Amendment, because "[t]he overbreadth claimant

bears the burden of demonstrating, from the text of [the law] and from actual fact,

that substantial overbreadth exists."  Virginia v. Hicks, 539 U.S. 113, 122, 123 S.

Ct. 2191, 2198, 156 L. Ed. 2d 148 (2003) (second alteration in original, internal

quotation marks omitted).

We review the reasonableness of a sentence imposed under the United States

Sentencing Guidelines Manual under an abuse of discretion standard.  Gall v.

United States, 552 U.S. 38, 56, 128 S. Ct. 586, 600, 169 L. Ed. 2d 445 (2007).  The

burden to establish unreasonableness also falls on Dean as the party challenging

the sentence.  United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

## III.  DISCUSSION

A.     Substantial Overbreadth

Dean argues that § 1466A(a)(2) is facially overbroad because it criminalizes

materials that are neither child pornography nor obscenity and therefore

criminalizes materials protected by the First Amendment.  Dean does not, however,

carry his burden to establish that any such overbreadth is substantial.  Thus, his

5

argument fails.

Overbreadth doctrine "prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." Ashcroft v. Free Speech Coalition, 535 U.S. 234, 255, 122 S. Ct. 1389, 1404, 152 L. Ed. 2d 403 (2002); see United States v. Williams, 553 U.S. 285, 292, 128 S. Ct. 1830, 1838, 170 L. Ed. 2d 650 (2008); Weaver v. Bonner, 309 F.3d 1312, 1318 (11th Cir. 2002). The Supreme Court describes facial invalidation for overbreadth as "strong medicine" that "has been employed by the Court sparingly and only as a last resort." Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S. Ct. 2908, 2916, 37 L. Ed. 2d 830 (1973). The Court has "vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep," before it may be invalidated. Williams, 553 U.S. at 292, 128 S. Ct. at 1838. As noted above, it is Dean's burden as challenger to prove substantial overbreadth. Virginia v. Hicks, 539 U.S. 113, 122, 123 S. Ct. 2191, 2198, 156 L. Ed. 2d 148 (2003).

Overbreadth analysis must begin with construction of the statute because "it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." Williams, 553 U.S. at 293, 128 S. Ct. at 1838. Dean argues that the statute is overbroad because it reaches to materials other than child

6

pornography and obscenity.  Therefore, we begin our analysis by defining these categories and determining whether the statute exceeds them.

Indecent materials are generally entitled to First Amendment protection unless they constitute child pornography or obscenity.  Ashcroft, 535 U.S. at 251, 122 S. Ct. at 1402.  The Supreme Court established in New York v. Ferber, 458 U.S. 747, 759-64, 102 S. Ct. 3348, 3355-58, 73 L. Ed. 2d 1113 (1982), that child pornography is not protected by the First Amendment because it is produced using actual minors, and because the government's interest in preventing the sexual exploitation and abuse of children is sufficient to justify the criminalization of child pornography.  Because the distribution of pornography depicting actual minors is "intrinsically related to the sexual abuse of children," the Court held that such distribution was also outside the protection of the First Amendment.  Id. at 759-61, 102 S. Ct. at 3355-57.  However, Ferber limits the category of unprotected child pornography to "works that visually depict sexual conduct by children below a specified age."  Id. at 764, 102 S. Ct. at 3358.  For example, Dean's criminal conduct in this case constitutes unprotected child pornography because he produced videos of his stepdaughter being sexually abused when she was a minor.[3]

The Supreme Court established in Miller v. California that obscenity is not

_____

[3]      It is for this reason that Dean's only challenge is one of facial overbreadth.

7

protected by the First Amendment.  413 U.S. 15, 93 S. Ct. 2607, 37 L. Ed. 2d 419

(1973).  Miller limits the category of obscenity to material that meets all three

requirements:  1) "the average person, applying contemporary community

standards, would find that the work, taken as a whole, appeals to the prurient

interest," 2) the average person, applying contemporary community standards,

would find that "the work depicts or describes, in a patently offensive way, sexual

conduct specifically defined by . . . law," and 3) "the work, taken as a whole, lacks

serious literary, artistic, political, or scientific value."  Id. at 24, 30, 93 S. Ct. at

2615, 2618 (internal quotations and citations omitted).

    The challenged statute in this case provides in relevant part:

> **(a) In general.**—Any person who . . . knowingly produces, distributes, receives, or possesses with intent to distribute, a visual depiction of any kind, including a drawing, cartoon, sculpture, or painting, that—
> . . .
>
> > **(2)(A)**  depicts an image that is, or appears to be, of a minor engaging in graphic bestiality, sadistic or masochistic abuse, or sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; and
> > **(B)**  lacks serious literary, artistic, political, or scientific value;
>
> or attempts or conspires to do so, shall be subject to the penalties provided in section 2252A(b)(1) . . . .

18 U.S.C. § 1466A(a).  We note that the statute prohibits specific sexual acts, and

that it incorporates only one of the three <u>Miller</u> prongs–i.e., the statute does not

prohibit sexually explicit images that have serious literary, artistic, political, or

scientific value.

We do not doubt that § 1466A criminalizes some speech that is neither child

pornography nor obscenity and therefore has the potential to be overbroad. Unlike

other child pornography laws, this statute does not restrict its scope to material that

depicts the sexual conduct of actual children, so it is proper to construe its reach to

criminalize not only child pornography, but also materials that would not involve

actual children and thus would not qualify as child pornography under <u>Ferber</u>.

<u>Compare</u> 18 U.S.C. § 1466A(a)(2)(A) (criminalizing material that "depicts an

image that is, <u>or appears to be</u>, of a minor") (emphasis added), and <u>id.</u> § 1466A(c)

("It is not a required element of any offense under this section that the minor

depicted actually exist."), <u>with</u> <u>id.</u> § 2252(a)(1)(A) (criminalizing only materials

that "involve[] the use of a minor engaging in sexually explicit conduct"置).

Likewise, unlike other provisions within the same section, § 1466A(a)(2)

incorporates only the third prong of the <u>Miller</u> test, so its reach must be construed

to criminalize some material that would not be obscene under <u>Miller</u>. <u>Compare</u> <u>id.</u>

§ 1466A(a)(2) (criminalizing material that "lacks serious literary, artistic, political,

or scientific value" without requiring the other <u>Miller</u> factors), <u>with</u> <u>id.</u>

9

§ 1466A(a)(1) (criminalizing only material that actually "is obscene").[4]

After the court has construed the statute, it must then ask whether Dean has carried his burden of demonstrating that the statute "criminalizes a substantial amount of protected expressive activity." Williams, 553 U.S. at 297, 128 S. Ct. at 1841. We conclude Dean has failed to carry his burden of proof; we doubt that § 1466A(a)(2) criminalizes a substantial amount of protected speech. Instead, the amount of protected material prohibited by the statute pales in comparison to the statute's legitimate sweep. The materials that Dean produced, for example, are clearly unprotected because they qualify as child pornography by documenting the actual abuse of a child and as obscenity because they appeal to the prurient interest, depict sexual conduct in a patently offensive manner, and lack serious artistic, political, or scientific value.

To carry his burden, Dean would be required to identify protected materials that would be targeted by the statute (i.e., materials that are neither child pornography nor obscenity), and would be required to demonstrate that such protected materials are substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep. In his brief, Dean suggests the following

---

[4]     Because § 1466A(a)(1) criminalizes only obscene material, such material would satisfy all three Miller prongs.

10

as an example of protected material targeted by the statute: an explicit film version of the novel Lolita, in which scenes of a minor engaging in explicit sexual conduct were produced using youthful adult actors or virtual images. However, this example misses the mark because a film version of Lolita would possess literary value sufficient to take it beyond the reach of the statute. See 18 U.S.C. § 1466A(a)(2)(B). At oral argument, Dean suggested the following as an example of overbreadth: home-made videotapes of sexual intercourse produced by a consenting adult couple, when at least one of the participants was so youthful in appearance to "appear to be" a minor. However, the "mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." Williams, 553 U.S. at 303, 128 S. Ct. at 1844 (quoting Members of City Council of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 800, 104 S. Ct. 2118, 2126, 80 L. Ed. 2d 772 (1984) (internal quotation marks omitted)). Dean has not carried his burden to establish that, even if all such home-videos were protected, but subject to criminalization, prohibition of these videos would demonstrate substantial overbreadth in an absolute sense or relative to the statute's legitimate sweep. Dean's argument therefore fails.[5]

------------

[5]      We refuse to follow the district court opinion cited by Dean, United States v. Handley, 564 F. Supp. 2d 996 (S.D. Iowa 2008), because it failed to analyze whether the potential overbreadth of § 1466A(a)(2) was substantial. The Handley court merely noted that the

The fact that Dean has not satisfied his burden of proof and failed to adduce plausible examples is unsurprising given the fact that few materials could appear to depict children engaging in graphic sexual conduct and lack serious value–factors required for application of the statute–without also qualifying as obscenity by appealing to the prurient interest and being patently offensive. Moreover, if the material did not merely appear to depict children, but actually depicted them, it would be unprotected as child pornography.

We find it difficult to conceive of graphic sexual material that lacks serious value yet would not appeal to the prurient interest. Whether a work appeals to the prurient interest and whether the work has value are matters evaluated by reference to the work as a whole. Miller v. California, 413 U.S. 15, 24, 93 S. Ct. 2607, 2615, 37 L. Ed. 2d 419 (1973). Appeal to the prurient interest is that which has "a tendency to excite lustful thoughts." Roth v. United States, 354 U.S. 476, 487 n.20, 77 S. Ct. 1304, 1310 n.20, 1 L. Ed. 2d 1498 (1957). A documentary or non-pornographic movie, for example, would not likely be classified as prurient despite the presence of sexual content because the purpose of the work as a whole would

_____

statute did not incorporate the full obscenity or child pornography tests and then found the statute unconstitutional. Id. at 1007. This reasoning is inadequate because Williams, 553 U.S. at 297, 303, 128 S. Ct. at 1841, 1844, makes clear that substantial overbreadth (not the mere existence of some overbreadth) is required before a statute may be invalidated, and the Handley court engaged in no analysis of substantiality.

12

be to educate or to tell a story.  Moreover, so long as a documentary or non-

pornographic movie succeeded in communicating its literary, artistic, political, or

scientific message, it would also possess "serious literary, artistic, political, or

scientific value" that would take it beyond the reach of the statute.  By contrast, a

pornographic film appeals to the prurient interest because it is designed to arouse

lustful thoughts in its audience.  If a film depicted graphic sexual conduct but did

not possess any "serious literary, artistic, political, or scientific value," it is difficult

to imagine any purpose for it other than appeal to the prurient interest.

For the foregoing reasons, we are reasonably sure that most materials

depicting graphic sexual conduct without communicating serious value would

appeal to the prurient interest.  Accordingly, the question of whether most (i.e., all

but an insubstantial amount) of the material criminalized by this statute is obscene

hinges on the second Miller factor, which asks whether the material is patently

offensive.  We can conceive of materials that would be covered under the statute

but not patently offensive.  For example, the Supreme Court has noted that

"[p]ictures of what appear to be 17-year-olds engaging in sexually explicit activity

do not in every case contravene community standards."  Ashcroft, 535 U.S. at 246,

122 S. Ct. at 1400.  Following this logic, we could imagine that a pornographic

film that appeared to depict older adolescents engaging in sexual intercourse would

not be patently offensive.

The window of graphic sexual materials defined under the statute (and satisfying the other two <u>Miller</u> prongs pursuant to the above discussion) that would not be patently offensive is nonetheless narrow because only certain sexual activities, and only those activities by adolescents of a certain age, could escape being deemed patently offensive.  We have no doubt that depictions of certain sexual acts listed by the statute–for example, graphic bestiality and sadistic or masochistic abuse–would be found patently offensive in communities tolerant of genital-genital intercourse.  Likewise, a community tolerant of depictions of 17-year-olds engaging in sexual intercourse might not be tolerant of a similar video depicting 15-year-olds, and we may assume that no community would be tolerant of pornography depicting younger minors.  See <u>Ashcroft</u>, 535 U.S. at 240, 122 S. Ct. at 1396 ("Pictures of young children engaged in certain acts might be obscene where similar depictions of adults, or perhaps even older adolescents, would not.").  Probably the only images of sexual acts banned by the statute that could escape being deemed patently offensive would be images of non-offensive sexual intercourse between consenting, older teenagers.

Thus, the only materials that would be entitled to First Amendment protection yet punished by the statute would be those that used adult actors or

14

computer models to depict older teenagers engaged in non-offensive sexual acts. If the materials used real minors, including older teenagers, they would be unprotectable as child pornography. See Ferber, 458 U.S. at 764, 102 S. Ct. at 3358. If they depicted younger looking subjects or offensive sexual acts, they would be obscene because they would satisfy the patently offensive prong of Miller (as well as the other two Miller prongs pursuant to our analysis above).

This discussion reveals why it is unsurprising that Dean has failed to carry his burden to demonstrate plausible examples of protected images that would nevertheless be criminalized by the statute. Because the statute targets only specific, graphic sexual activity, and because the statute targets only images that lack serious literary, artistic, political, or scientific value, the category of protected materials which are nonetheless prohibited by the statute is very narrow. By contrast, the plainly legitimate sweep of the statute is quite broad. As noted above, images of child pornography produced using actual minors are unprotected, and the statute's prohibition of these images is plainly legitimate. Also, the statute prohibits only images that lack any serious literary, artistic, political, or scientific value. As explained above, we are reasonably sure that most materials depicting graphic sexual conduct without communicating serious value would appeal to the prurient interest. And we demonstrated above that the vast majority of images

15

prohibited by the statute satisfy not only the no serious value and prurient interest prongs of <u>Miller</u>, but also satisfy its patently offensive prong.  Thus, the vast majority of images prohibited by the statute are plainly within its legitimate sweep. Dean has failed to satisfy his burden of pointing to plausible examples of protected imaged that nevertheless would be prohibited by the statute.  And we can imagine only a narrow window of such materials—i.e., those using adult actors or computer models to depict older teenagers engaged in non-offensive sexual acts.  Such non-offensive sexual conduct is only one of the numerous graphic sexual acts targeted by the statute, and even this category is limited because only images of older looking teenagers could escape being deemed patently offensive (as well as satisfying the other two <u>Miller</u> prongs and thus being obscene).  Especially when this narrow window is measured against the plainly legitimate and broad sweep of the statute, Dean has failed to show that the statute is facially overbroad.

This case is readily distinguishable from <u>Ashcroft v. Free Speech Coalition</u>, 535 U.S. 234, 122 S. Ct. 1389, 152 L. Ed. 2d 403 (2002).  The statute at issue in that case had no exception for materials that were non-obscene by reason of their serious literary, artistic, political, or scientific value, and it therefore risked suppressing a substantial amount of protected speech if the material contained even a single instance of graphic sexual conduct by what appeared to be a minor.  The

Court was particularly concerned about the possible criminalization of literary

works dealing with the themes of teenage sexual activity and the sexual abuse of

children. Id. at 246-48, 122 S. Ct. at 1400-01. The statute at issue in the instant

case does not carry the same risk because it criminalizes only materials that have

no serious literary, artistic, political, or scientific value. As analyzed above, the

removal of material of value from the reach of the statute means that the

overwhelming sweep of the statute is legitimate—i.e., prohibiting only material

that is child pornography, obscenity, or both.

B.    Narrow Tailoring

Dean argues that one of the reasons for the statute's overbreadth is that it

lacks an appropriate scienter requirement and therefore is not "narrowly drawn."

We address this argument separately from overbreadth because it sounds like a

challenge to the statute's narrow-tailoring rather than its overbreadth. In either

case, we find that the argument fails because it relies on an erroneous construction

of the statute.[6]

Dean argues specifically that the statute is deficient because it is structured

so that the word "knowingly" in the statute modifies only the operative verbs (i.e.,

---

[6]    Dean asserts no other narrow-tailoring arguments. Therefore, any such arguments
are deemed abandoned.

production, distribution, receipt, or possession of an image) and does not require the defendant to know the characteristics of the image (i.e., that it depicts certain sexual conduct by what appears to be a minor and possesses no serious literary, artistic, political, or scientific value).  However, the Supreme Court's decision in United States v. X-Citement Video, Inc., 513 U.S. 64, 115 S. Ct. 464, 130 L. Ed. 2d 372 (1994), disposes of this argument.  X-Citement involved a similar statute that clearly imposed a "knowingly" scienter requirement on a set of operative verbs but described the characteristics of the proscribed images "in independent clauses separated by interruptive punctuation."  Id. at 68, 115 S. Ct. at 467.  The Court held that, even if it would be more natural to apply the scienter requirement only to the operative verbs, the statute should nonetheless be read so that the scienter requirement applied to the characteristics of the material.  Id. at 68-78, 115 S. Ct. at 467-72.

We follow X-Citement and hold that the scienter component of § 1466A(a)(2) requires an offender to know that the image he produces, distributes, receives, or possesses with intent to distribute is an image possessing the characteristics described in § 1466A(a)(2)(A)-(B).  Accordingly, the statute cannot be deficient for failure to require that an offender be aware of the contents of the depiction.

18

C.    Vagueness

Dean has attempted to argue on appeal that § 1466A is invalid because it does not specify the age before which a minor cannot be depicted in graphic sexual material.  While he includes this argument under the general umbrella of overbreadth, it sounds like a vagueness challenge.  In either case, Dean did not present this argument to the district court in his motion for new trial or brief in support of that motion.  We therefore deem this argument abandoned.

D.    Reasonableness of Dean's Sentence

Dean argues that his sentence is substantively unreasonable on the ground that the perpetrators of similar crimes have been sentenced to shorter terms and on the ground that the United States Sentencing Guidelines Manual is overly harsh in its punishment for child pornography crimes.  These arguments are without merit for the reasons discussed below.

As we noted above, we review the reasonableness of a sentence imposed under the United States Sentencing Guidelines Manual under an abuse of discretion standard, Gall v. United States, 552 U.S. 38, 56, 128 S. Ct. 586, 600, 169 L. Ed. 2d 445 (2007), and the burden to prove unreasonableness falls on Dean, United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).  When reviewing a sentence for reasonableness, this Court must evaluate whether the sentence fails to achieve the

purposes of sentencing stated in 18 U.S.C. § 3553(a).  Id.  This mode of review is

deferential, and "when the district court imposes a sentence within the advisory

Guidelines range, we ordinarily will expect that choice to be a reasonable one."  Id.

"[A]n acknowledgment by the district court that it has considered the defendant's

arguments and the factors in section 3553(a) is sufficient."  Id. at 786.

After considering all the offense level adjustments, the district court found

that Dean's offense level was forty-three, an offense level for which the Guidelines

recommend a life sentence.[7]  Because the statutory maximum sentence for Dean's

offenses was thirty years—up to twenty years for production under § 1466A(a)(2)

and up to ten years for possession under § 2252A(a)(5)(B)—and because this

maximum is less than the Guidelines recommendation, the Guidelines

recommended that the two full sentences be run consecutively.  Thus, the

Guidelines recommended the full, thirty-year, maximum sentence.

The district court did not abuse its discretion by imposing the statutory

maximum sentences for Dean's convictions, the sentence recommended by the

Guidelines.  The record makes clear that the district court considered all the

§ 3553(a) factors and set forth a reasoned basis for its weight of the factors after

considering the evidence and arguments before it.  The court then found that the

---

[7]      In this case, there was no range.

20

maximum sentence was sufficient but not greater than necessary to comply with the statutory purposes of sentencing.

Dean's arguments–that his sentence is unreasonable on the basis of a comparison of his sentence with those of similar offenders and his categorical challenge to the Guidelines–are disposed of by United States v. Irey, 612 F.3d 1160 (11th Cir. 2010) (en banc). Dean relied on an earlier panel decision in United States v. Irey, 563 F.3d 1223 (11th Cir. 2009), in which a panel of this Court upheld a district court's decision to enter a downward variance from the Guidelines in a case where the defendant had produced child pornography from the sadistic sexual abuse of at least 50 girls as young as four years old. Dean relied on the panel opinion in Irey—which affirmed the district court's imposition of a prison sentence of 17-1/2 years—in support of his disparity argument that his sentence was unreasonable because similar offenders had received lesser sentences. Sitting en banc, however, the Eleventh Circuit vacated that panel decision. 612 F.3d at 1225. The en banc Court cited numerous cases involving sentences of thirty years or more for conduct similar to but clearly not more egregious than Dean's. Id. at 1220-21. Thus, Dean's disparity argument is wholly without merit.

The Irey en banc Court looked to the language of Kimbrough v. United States, 552 U.S. 85, 109, 128 S. Ct. 558, 574-75, 169 L. Ed. 2d 481 (2007), in

which the Supreme Court stated that a variance "may attract greatest respect when the sentencing judge finds a particular case outside the heartland to which the Commission intends individual Guidelines to apply" but that "closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range fails properly to reflect § 3553(a) considerations even in a mine-run case." 612 F.3d at 1188, 1202-03. Because Irey's offense was within the heartland of child-pornography offenses, the Eleventh Circuit exercised the closer standard of review and rejected "as unreasonable and a clear error in judgement the district court's view that the guidelines involving sex crimes against children are too harsh in a mine-run case because pedophiles have impaired volition." Id. at 1203. The en banc Court emphasized the "devastating and permanent harm that this type of crime inflicts on its young victims."[8] Id. Irey en banc held that it was error for a district court under the circumstances there to vary downward from the Guidelines in a case within the heartland of child-

_____

[8] Unlike Irey, Dean did not argue that the Guidelines were flawed because of pedophiles' reduced volition. However, we find that Irey's reasoning applies to the case at hand. Both urged categorical challenges to the application of the Guidelines for child pornography offenses. Furthermore, the Court rejected the impaired-volition argument because of the severity of the harm to the victims, including the lasting physical and emotional harm inflicted by child rape, the continuing emotional harm to a child caused by the circulation of pornographic depictions, and the potential for pornographic materials to incite pedophiles to commit further assaults. 612 F.3d at 1203, 1207-08. These particular harms are clearly present in Dean's case, which, like Irey's, involved the production of child pornography from the sexual assault of a child.

22

pornography offenses.  Id.

In this case, it is clear from the district court's remarks at sentencing, and the sentence he imposed, that he considered that Dean's conduct fell within the heartland of the Guidelines child-pornography cases, or was even more egregious in light of the torture involved.  We readily conclude that the district court did not abuse its discretion in imposing the maximum, thirty-year sentence.  The Irey en banc decision provides strong support for our conclusion that the district court did not abuse its discretion in rejecting Dean's argument for a lesser sentence.

Dean also relies on a paper by federal public defender Troy Stabenow, Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines (Jan. 1, 2009), http://www.fd.org/pdf_lib/child%20porn%20july%20revision.pdf,[9] and cases that have cited it.  Dean's reliance is misplaced.  Stabenow's paper argues that the current Guidelines for child-pornography offenses are flawed because the severity of sentences entered against the typical downloader of child pornography, who has had no direct connection to the production of the materials or the abuse of children, has increased drastically without any "empirically demonstrated need for

_____

[9]    Copies of the internet materials cited in this opinion are on file in the Clerk's Office.  See 11th Cir. R. 36, I.O.P. 10.

23

consistently tougher sentencing." Id. at 3.  The cases that Dean references as

having cited Stabenow's paper are similarly concerned that the first-time "typical

downloader" (as opposed to a "predator" or "active abuser") may receive too harsh

a sentence.  United States v. Grober, 595 F. Supp. 2d 382, 394, 396, 402 (D.N.J.

2008) (finding that the Guidelines did not deserve deference in a "typical

downloading case"); see United States v. Hanson, 561 F. Supp. 2d 1004, 1011

(E.D. Wis. 2008) (finding that the Guidelines did not deserve deference as applied

to a typical first-time offender who shared child-pornography files on the Internet

but produced none directly); United States v. Shipley, 560 F. Supp. 2d 739, 744

(S.D. Iowa 2008) (same); United States v. Baird, 580 F. Supp. 2d 889, 895 (D.

Neb. 2008) (entering a reduced sentence after finding that recent changes to the

Guidelines "served to muddy the qualitative distinctions between 'mere possession'

and 'distribution of child pornography,'" and that "[t]he Guidelines at issue do not

adequately reflect those important distinctions in levels of culpability"); see also

United States v. Huffstatler, 571 F.3d 620, 624 (7th Cir. 2009) (citing Stabenow's

article but concluding that, "while district courts perhaps have the freedom to

sentence below the child-pornography guidelines based on disagreement with the

guidelines, . . . they are certainly not required to do so").

In this case, however, we need not, and expressly do not, address the

concerns in, or the rationale of, the Stabenow article or the cited cases. Dean is no mere downloader. He sexually abused his stepdaughter and filmed hundreds of the episodes of abuse to generate pornographic films. Not one of the sources he cites supports the argument that the Guidelines are too harsh with respect to perpetrators who assault children to produce pornography. To the contrary, Dean's stepdaughter has suffered the kind of grave harm described by our en banc Court in Irey. 612 F.3d at 1207-08.

## IV.  CONCLUSION

The district court did not err in rejecting Dean's overbreadth challenge, because Dean has failed to carry his burden to establish that the statute criminalizes a substantial amount of protected speech, even in an absolute sense, and especially not relative to the broad legitimate sweep of the statute. The district court likewise did not err in sentencing Dean to the statutory maximum sentence as provided for by the Guidelines; Dean has failed to carry his burden to establish that the sentence was unreasonable.

AFFIRMED.

A True Copy Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

25